## UCKER *v.* WATSON.

### Opinion delivered December 7, 1925.

1. MORTGAGES—DEED ABSOLUTE IN FORM.—While oral evidence is admissible to show that a deed absolute in form was intended as a mortgage, the intention of the parties will govern its construction and enforcement.

2. MORTGAGES—DEED ABSOLUTE IN FORM.—A deed absolute in form will not be construed to be a mortgage, though a contemporaneous contract provided that the several lots conveyed might be repurchased by the grantor within a year by paying certain sums, where both parties testified that the deed and contract expressed their intention.

Appeal from Washington Chancery Court; *Sam Williams,* Chancellor; reversed.

*H. L. Pearson,* for appellant.

*J. V. Walker,* for appellee.

McCULLOCH, C. J. Appellee, Charles A. Watson, was the owner of certain lots in the city of Fayetteville, and on April 5, 1922, he conveyed them to appellants, W. E. Ucker and A. C. Ucker, by deed in absolute form purporting to convey the title in fee simple. The pres-

ent controversy arises concerning the effect of the deed, whether it is to be construed as a conveyance of the title of the lots in fee simple, or as a mortgage in connection with a written contract between the parties, entered into prior to the execution of the deed.

Appellee first executed two mortgages to appellants to secure debts aggregating $1,000. The two mortgages conveyed all of the lots described in a contract entered into between the parties on March 30, 1922, which said contract, omitting caption, etc., reads as follows:

"That Charles A. Watson, first party, agrees to deed to the Ucker Bros., the following lots, all in Gunter's Addition to the city of Fayetteville, Arkansas, to-wit: lots 1, 2, 5 and 6, block 8, and lot 6 and the south half of lot 5, block eleven (11). That the Ucker Bros. by A. C. Ucker, for himself and under power of attorney for W. E. Ucker, agrees to the following: That on payment by the said Chas. A. Watson to A. C. Ucker on or before June 1, 1922, of $150 to release lots 1 and 2, block 1, of aforesaid addition from the mortgage held by Ucker Bros., found in record 152 on page 82, of Washington County, Arkansas, records, and on payment by Chas. A. Watson likewise of $200 on or before June 1, 1922, to release lot 6 and the south half of lot 5, block 11, aforesaid, from the mortgage held by Ucker Bros., found in record 147 on page 611, Washington County records, and to deed said lot and one-half to Chas. A. Watson free of said mortgage; that likewise the Ucker Brothers agree to give Chas. A. Watson, first party, one year from April 1, 1922, to sell lots 1, 2, 5 and 6, block 8, said addition, and likewise agree that each of the 4 lots last mentioned are likewise to be regarded as of equal value, and that, if Chas. A. Watson at any time within the year from April 1, 1922, shall sell two or more of said lots just mentioned, they shall be released, and deeded to said first party on payment of their proportional value of what is then due; that is to say, said lots 1 and 2, block 8, shall be released from mortgage found in record 152 on page 82, and 5 and 6, block 8,

likewise from mortgage in record 147, on page 611, Washington County records, and the same shall then on payment mentioned be deeded by A. C. Ucker to Chas. A. Watson free of said mortgages. And it is agreed that, in case any of these 4 lots held one year are not sold at that time, they are to be the property in fee simple of the Ucker Bros., and the debt is to be discharged. Interest is to be compounded yearly and not quarterly on the principal note."

Pursuant to this contract, appellee executed a deed to appellants on April 5, 1922, conveying the lots which the contract specified should be deeded, to-wit: lots 1, 2, 5 and 6, block 8, and lot 6, and the south half of lot 5 in block 11. Subsequently appellee paid to appellants the sum of $150, and lots 1 and 2 of block 1 were released from the mortgage in accordance with the contract, and appellee also paid to appellants the sum of $200, and the lots in block 11 were released as provided in the contract. Appellee failed to sell the other four lots specified in the contract within the time mentioned or to pay for the same, and, as before stated, the controversy between the parties now is whether the deed should be treated as a mortgage, or as an absolute conveyance. The chancery court held that the deed and contract, when read together, constituted a mortgage and offered to decree a foreclosure, but appellants declined to accept such a decree and insist upon having the absolute title decreed to them.

The controversy must be decided upon the face of the papers, for each of the parties expressly disclaims any intention other than that expressed in those instruments of writing. Each of them testified as witnesses in the case and very candidly admitted that at the time of this transaction between them they had no idea that a deed absolute in form could, under any circumstances, be treated as a mortgage, and that they had no intention other than that expressed in the written record of the transaction between them.

The testimony introduced in the case establishes the fact that at the time the deed was made the lots were worth not exceeding $400, which was substantially the amount of the balance of the original debt after all payments had been made. In analyzing the contract and its relation to the deed it must be remembered that lots 1 and 2 in block 2 are not conveyed in this deed, but were embraced in one of the mortgages. There being no absolute conveyance of these, and no release from the mortgage prior to the payment of the $150 as specified in the contract, they were left subject to the mortgage, and the fact that they remained under mortgage lien does not affect the interpretation to be placed on the conveyance of the other lot. Appellee paid the sum mentioned, and these two lots were released from the mortgage; therefore that part of the transaction has no bearing upon this controversy.

The lots in block 11 were in the conveyance, and also in the original mortgage; but the amount of $200 specified in the contract was paid, and those two lots were deeded back to appellants as provided in the contract. Neither does that transaction have any bearing on the controversy, because the contract expressly provided for a reconveyance of the property.

It is insisted by counsel for appellee that the language of the court necessarily characterizes the transaction as a continuation of the original mortgage, and not as a contract for sale and resale. Stress is laid on the concluding clause of the contract, which reads that, in case the four lots are not sold within the year "they are to be the property in fee simple of the Ucker Brothers and the debt is to be discharged." The whole tenor of the contract was that the amount of the original debt should be paid. This was the consideration upon which appellee was to have a reconveyance of the property, and the concluding language of the contract was merely descriptive of this debt, and does not show any intention to treat the conveyance as a mortgage instead of an absolute conveyance of the title according to the import of the

deed itself. The contract provides for the conveyance by appellee to appellants, and merely specifies the terms upon which reconveyance may be had. This of itself constitutes a sale on condition, and not a mortgage. The existence of the original debt was continued only for the purpose of providing the terms upon which there should be a reconveyance by appellants to appellee, and the fact that the original debt was thus used in the transaction does not convert the deed into a mortgage.

We have often held that oral evidence is admissible to show that a deed absolute in form was intended as a mortgage, and that the true intention of the parties to the transaction will govern its construction and enforcement. *Wimberly* v. *Scoggin,* 128 Ark. 67; *Snell* v. *White,* 132 Ark. 349. In the present case the real intention of the parties as shown by the undisputed evidence was in accord with the express language of the deed, which was absolute in terms; for, as we have already seen, both parties testified that they intended just what was expressed in the language of the deed and contract— nothing more and nothing less. The fact that certain partial payments were made by appellee to appellants, and the acceptance thereof by appellants during the year specified in the contract, has no bearing upon the construction of the deed and contract for the reason that appellee had the legal right to make payments and appellants were bound to receive them. It is true the contracts provided for the sale of these lots by appellee during the year specified, and that, when one or all of them should be sold, appellants would reconvey them, but the gist of this provision was that appellee should have the lots back upon payment of the proportionate part of the original debt. The fact that they were to be reconveyed to the purchaser was a mere incident, and appellee had the right to pay the proportionate part specified, and have the lots reconveyed to himself.

Our conclusion is that the chancery court erred in holding that the deed should be construed as a mortgage.

The decree is therefore reversed, and the cause remanded with directions to enter a decree in favor of appellants in accordance with the prayer of the complaint.